No. 25-8077

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

STATE OF WASHINGTON, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Oregon

## BRIEF FOR APPELLANTS

*Of Counsel:*

EMILY CLAIRE MIMNAUGH
*Deputy General Counsel*

*U.S. Department of Health and
Human Services*

BRETT A. SHUMATE
*Assistant Attorney General*

SCOTT E. BRADFORD
*United States Attorney*

DANIEL TENNY
GABRIEL I. SCHONFELD
*Attorneys, Appellate Staff
Civil Division, Room 7219
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-3306*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUE ................................................................. 1

PERTINENT STATUTES AND REGULATIONS ................................... 3

STATEMENT OF THE CASE ................................................................. 3

    A.    Statutory Background ................................................................. 3

    B.    Factual Background ..................................................................... 7

    C.    Prior Proceedings ..................................................................... 10

SUMMARY OF ARGUMENT ............................................................... 13

STANDARD OF REVIEW ..................................................................... 17

ARGUMENT ........................................................................................... 17

THE PRELIMINARY INJUNCTION MISCONTRUES THE PREP
    AND SRAE STATUTES AND ARROGATES TO THE
    DISTRICT COURT AUTHORITY THAT IS VESTED IN
    THE AGENCY ................................................................................. 17

CONCLUSION ....................................................................................... 28

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                      **Page(s)**

*Bresgal v. Brock,*
    843 F.2d 1163 (9th Cir. 1987) .................................................21

*Church of the Holy Light of the Queen v. Holder,*
    443 F. App'x 302 (9th Cir. 2011).........................................23

*Credit Suisse First Bos. Corp. v. Grunwald,*
    400 F.3d 1119 (9th Cir. 2005) .............................................17

*Department of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020) ........................................................... 16, 26

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) ..............................................................25

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana,*
    98 F.4th 1180 (9th Cir. 2024)..............................................24

*Gulf Oil Corp. v. Brock,*
    778 F.2d 834 (D.C. Cir. 1985) .............................................24

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ..............................................................25

*Marsh v. Oregon Nat. Res. Council,*
    490 U.S. 360 (1989) ..............................................................26

*Meinhold v. Department of Def.,*
    34 F.3d 1469 (9th Cir. 1994) ...............................................24

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ...............................................15, 21, 22

*National Wildlife Fed'n v. National Marine Fisheries Serv.,*
    524 F.3d 917 (9th Cir. 2008) ........................................15, 21

*Unemployment Comp. Comm'n of Alaska v. Aragon,*
  329 U.S. 143 (1946) ........................................................17, 26

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .................................................................17

**Statutes:**

28 U.S.C. § 1292(a)(1)...........................................................1

28 U.S.C. § 1331....................................................................1

42 U.S.C. § 705(a) .................................................................7

42 U.S.C. § 705(a)(5)(B) ....................................................4, 7

42 U.S.C. § 706(b)(2)-(3) ...................................................5, 7

42 U.S.C. § 710.....................................................................3

42 U.S.C. § 710(a) .................................................................7

42 U.S.C. § 710(a)(1) .........................................................4, 7

42 U.S.C. § 710(b)(1)....................................................3, 6, 18

42 U.S.C. § 710(b)(2)(A)................................................3, 6, 18

42 U.S.C. § 710(b)(2)(B)........................................................7

42 U.S.C. § 710(b)(2)(B)-(E)................................................3, 7

42 U.S.C. § 710(b)(3)....................................................3, 6, 18

42 U.S.C. § 710(b)(4)..............................................................6

42 U.S.C. § 710(d)(2)..........................................................4, 7

42 U.S.C. § 710(e)(1)-(2) .......................................................7

42 U.S.C. § 713......................................................................3

42 U.S.C. § 713(a)(1)(A) ................................................................. 5

42 U.S.C. § 713(a)(1)(C) ................................................................. 4

42 U.S.C. § 713(a)(1)(C)(i) ............................................................ 5

42 U.S.C. § 713(a)(1)(C)(i)-(ii) ..................................................... 5

42 U.S.C. § 713(b)(1) ................................................................. 3, 4

42 U.S.C. § 713(b)(2)(A) ............................................................ 3, 4

42 U.S.C. § 713(b)(2)(A)(i) .................................................. 4, 17, 19

42 U.S.C. § 713(b)(2)(A)(ii) ............................................ 4, 17-18, 19

42 U.S.C. § 713(b)(2)(B) ......................................................... 3, 4, 5

42 U.S.C. § 713(b)(2)(B)(ii) ........................................................... 7

42 U.S.C. § 713(b)(2)(C) ................................................... 3, 4, 18, 19

42 U.S.C. § 713(d)(2)(B)(iv) ......................................................... 5

42 U.S.C. § 713(e)(1)-(2) ............................................................. 5

**Rule:**

Fed. R. App. P. 4(a)(1)(B)     1

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction over this challenge to federal agency action under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over this preliminary injunction appeal. The district court issued its preliminary injunction on October 27, 2025. ER-5. The government filed a timely notice of appeal 60 days later, on December 26, 2025. ER-241; Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUE

The Department of Health and Human Services (HHS) administers the Personal Responsibility Education Program (PREP) and Sexual Risk Avoidance Education program (SRAE), which provide states with federal funding for educational programs that address adolescent development and sexual health. PREP grants support education on the prevention of pregnancy and sexually-transmitted disease, as well as other enumerated "adult preparation subjects." SRAE grants fund programs that educate teens on the benefits of abstaining from premarital sexual activity. In addition to addressing the topics identified in each program's authorizing statute, curricula

funded under PREP and SRAE are required to be "medically accurate and complete," as well as culturally appropriate for their audience. HHS discovered that certain grantees are using these funds for programming that includes gender ideology content, and HHS adopted grant conditions providing that such content is beyond the scope of education authorized in the PREP and SRAE statutes. The district court enjoined the agency from enforcing not only those Gender Conditions but also any "materially similar terms or conditions," including "any other terms or conditions that require" plaintiffs to remove "gender ideology" or "gender identity references" from PREP or SRAE curricula.

The issue presented is whether the district court properly enjoined HHS from enforcing any terms and conditions that limit references to gender ideology in PREP and SRAE curricula.[1]

---

[1] At this time the government is appealing the breadth of the district court's preliminary injunction, rather than its underlying conclusion that plaintiffs are likely to succeed on the merits of their claim that the PREP and SRAE statutes do not authorize the Gender Conditions. The government is not, however, abandoning its view that as a categorical matter Congress did not authorize PREP or SRAE funding for programs that contain gender ideology content. Litigation on the merits of that issue and others not presented in this appeal are ongoing in the district court.

2

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

This case involves a pair of federal grant programs administered by the Department of Health and Human Services (HHS).[2] Both the Personal Responsibility Education Program (PREP), *see* 42 U.S.C. § 713, and the Sexual Risk Avoidance Education program (SRAE), *see id.* § 710, fund state programs that teach young people about sexual health and adolescent development.

As discussed in more detail below, PREP and SRAE share a common structure. First, they provide funding only for education on certain authorized subjects. *See* 42 U.S.C. §§ 710(b)(1), (2)(A), (3), 713(b)(1), (2)(A), (C). Second, they require funded programming to meet certain quality requirements. *See id.* §§ 710(b)(2)(B)-(E), 713(b)(2)(B). And third, they allow a state to receive its allotted share of funds only

---

[2] HHS administers PREP and SRAE through the Family and Youth Services Bureau (FYSB) of the Administration for Children and Families (ACF), and some record materials refer to these sub-agencies. For simplicity, this brief refers only to HHS.

3

by submitting an application to HHS explaining how it will use the money in compliance with statutory subject-matter and quality requirements. *See id.* §§ 705(a)(5)(B), 710(a)(1), (d)(2), 713(a)(1)(C).

### 1. Personal Responsibility Education Program (PREP).

Congress has made PREP funding available for a specific purpose—to support states in offering "personal responsibility education programs" in a manner "consistent with" the terms of PREP's authorizing statute. 42 U.S.C. § 713(b)(1). Programs funded through PREP must be "designed to educate adolescents" on two topics. *Id.* § 713(b)(2)(A). First, PREP programs must teach "both abstinence and contraception for the prevention of pregnancy and sexually transmitted infections." *Id.* § 713(b)(2)(A)(i). Second, such programs must address at least three of six enumerated "adulthood preparation subjects," *id.* § 713(b)(2)(A)(ii), such as "[a]dolescent development," "[f]inancial literacy," and "[h]ealthy life skills," *id.* § 713(b)(2)(C).

PREP content that is addressed to "the prevention of pregnancy and sexually transmitted infections" must also meet specific quality requirements. 42 U.S.C. § 713(b)(2)(A)(i), (B). For example, such programming must be "medically accurate and complete," "provide[]

4

age-appropriate information and activities," and be provided "in the cultural context that is most appropriate for individuals in the particular population group to which they are directed." *Id.* § 713(b)(2)(B); *see also id.* § 713(e)(1)-(2) (defining "age-appropriate" and "medically accurate and complete").

PREP funding is allotted to each state according to a population-based formula. 42 U.S.C. § 713(a)(1)(A). To claim its allotted funds, a state must "submit[] an application" to HHS "contain[ing] an assurance that the State has complied with the [statutory] requirements . . . in preparing and submitting the application," *id.* § 713(a)(1)(C)(i)-(ii), and awards may be paid out only if HHS "approves the application (or requires changes to the application that the State satisfies)," *id.* § 713(a)(1)(C)(i). With notice and an opportunity for a hearing, HHS may withhold or demand repayment of PREP funds that are not used in accordance with the statute. *Id.* §§ 706(b)(2)-(3), 713(d)(2)(B)(iv).

### 2. Sexual Risk Avoidance Education Program (SRAE).

Like PREP, the SRAE program provides funding only to support education on specific subjects. The purpose of SRAE funding "is to enable the State . . . to implement education exclusively on sexual risk

5

avoidance," defined as "voluntarily refraining from sexual activity." 42 U.S.C. § 710(b)(1). SRAE programming must address each of six enumerated sub-topics, such as "[t]he increased likelihood of avoiding poverty when youth attain self-sufficiency and emotional maturity before engaging in sexual activity," and "[h]ow other youth risk behaviors, such as drug and alcohol usage, increase the risk for teen sex." *Id.* § 710(b)(3). In addressing each of these topics, the "unambiguous and primary emphasis and context" must be "a message to youth that normalizes the optimal health behavior of avoiding nonmarital sexual activity." *Id.* § 710(b)(2)(A).[3]

SRAE programming also must meet quality requirements that are similar to those that apply to pregnancy and disease-prevention education under PREP. Education funded through SRAE must be "medically accurate and complete"; "age-appropriate"; "based on adolescent learning and developmental theories for the age group receiving the education"; and "culturally appropriate, recognizing the experiences of youth from diverse communities, backgrounds, and

---

[3] SRAE's authorizing statute also includes special limitations regarding "information provided on contraception." *See* 42 U.S.C. § 710(b)(4). Those limitations are not at issue in this case.

6

experiences." 42 U.S.C. § 710(b)(2)(B)-(E); *see also id.* § 710(e)(1)-(2) (defining "age-appropriate" and "medically accurate and complete").

As with PREP, SRAE funding is allotted to each state under a statutory formula. 42 U.S.C. § 710(a). To claim its allotment, a state must submit an application to HHS. *Id.* §§ 705(a), 710(a)(1), (d)(2). The application must provide that the allotted funds will only be used "to carry out the purposes" of the SRAE program. *Id.* §§ 705(a)(5)(B), 710(d)(2). As with PREP funds, HHS may with notice and opportunity for a hearing withhold or demand repayment of SRAE funds that are not used in accordance with the statute. *Id.* §§ 706(b)(2)-(3), 710(d)(2).

## B.  Factual Background

HHS routinely reviews states' PREP and SRAE program materials to ensure that they comply with the statutory requirement to provide information that is "medically accurate and complete." ER-173-74; *see also* 42 U.S.C. §§ 710(b)(2)(B), 713(b)(2)(B)(ii). In the spring of 2025, the agency requested that all PREP grantees submit information to facilitate such a medical-accuracy review. ER-165; ER-163.

Upon reviewing the submitted materials, HHS determined that nearly every state's PREP program contained at least some "gender ideology content." ER-176. HHS subsequently issued new "notices of award" to each PREP and SRAE grantee, *see, e.g.*, ER-181 (PREP); ER-179 (SRAE),[4] and published new supplemental terms and conditions applicable to each program, *see* ER-187 (PREP); ER-183 (SRAE). Each notice, as well as the supplemental terms and conditions, contained a new condition explaining that "gender ideology" is outside the subjects that Congress authorized for inclusion in PREP and SRAE programming. The Gender Conditions provide that:

> Recipients are prohibited from including gender ideology in any program or service that is funded with this award. The statutory authority for the . . . program under which this grant has been awarded . . . does not authorize teaching students that gender identity is distinct from biological sex or boys can identify as girls and vice versa, or that there is a vast spectrum of genders that are disconnected from one's sex. Therefore, gender ideology is outside of the scope of the statutory authority for this award.

---

[4] Notices of award issued to other plaintiffs, which are identical in all respects material to this appeal, are available on the district court docket. *See generally* Dkt. No. 36 (Index of Declarations in Support of Plaintiffs' Motion for Preliminary Injunction).

ER-187 (PREP Terms & Conditions); ER-182 (PREP Notice of Award); ER-184 (SRAE Terms & Conditions); ER-180 (SRAE Notice of Award). A grantee may accept the new Gender Conditions by accepting funds offered under the new notice of award. *See* ER-180; ER-182.

HHS next provided PREP grantees with more specific notice of their obligation to remove program content that does not comply with the Gender Conditions or the statutory requirements that underlie it. The agency did so by sending a letter to each grantee that had submitted materials containing "gender ideology content." *See* ER-83-162 (letters to plaintiffs). Each letter included specific examples of the content submitted by that grantee that HHS had identified as statutorily ineligible for PREP funding, notified the recipient that its "current PREP curricula and program materials are out of compliance with the PREP statute and HHS regulations and must be modified," *see, e.g.*, ER-86, and instructed the grantee to "remove all content concerning gender ideology from its curricula, program materials and any other aspects of its program delivery within 60 days," *see, e.g.*, *id.* (emphasis omitted). The letters acknowledged that HHS had previously approved the program materials at issue, but explained that the agency

9

had erred in doing so because "that approval exceeded the agency's authority to administer the program consistent with the authorizing legislation as enacted by Congress." *Id.*

Each letter also made clear that HHS's finding of non-compliance was based wholly on the agency's determination that gender content falls outside PREP's statutory scope. Because HHS ultimately concluded as a threshold matter of law that PREP programming may not address the subject at all, the agency did not reach the subsidiary question of whether specific gender content is medically inaccurate or otherwise violates applicable statutory quality requirements. *See, e.g.*, ER-83 n.1.

## C. Prior Proceedings

**1.** Plaintiffs are 16 states and the District of Columbia, all of which have been awarded PREP funding and four of which have been awarded SRAE funding. ER-199-200. They filed suit and moved for a preliminary injunction soon after receiving notice that their PREP programs did not comply with the Gender Conditions and underlying statutory requirements. *See* ER-194; ER-191.

10

Plaintiffs challenged as arbitrary, capricious, and contrary to law HHS's adoption of the Gender Conditions, as well as the agency's direction that plaintiffs come into compliance by removing all gender content from their PREP program materials. *See* ER-222-36; *see also* ER-226 (defining the actions constituting the "PREP and SRAE Gender Conditions" that are the subject of plaintiffs' claims). In both their complaint and preliminary injunction motion, plaintiffs requested relief from HHS's adoption and enforcement of the Gender Conditions. *See* ER-237 (praying for an order vacating and declaring unlawful the "PREP and SRAE Gender Conditions" and enjoining the government "from implementing or enforcing" the same); ER-193 (requesting a preliminary injunction against "implementation and enforcement" of the same actions). Plaintiffs emphasized that they sought only "[m]odest [r]elief"—"a preliminary injunction that would prevent enforcement of the challenged directives against the Plaintiff States themselves." ER-82. The government opposed preliminary relief but urged in the alternative that "[a]ny injunction . . . should be narrowly tailored to the specific harms suffered by the named plaintiffs in this action." ER-178.

11

**2.** The district court granted a preliminary injunction. The court first held that plaintiffs are likely to succeed on the merits of their claims that adopting and enforcing the Gender Conditions exceeded HHS's authority under the PREP and SRAE authorizing statutes, *see* ER-31-43, was arbitrary and capricious, ER-43-54, and violated the Spending Clause and separation of powers, ER-54-61. It then held that the remaining equitable factors supported preliminary relief. ER-62-78.

The district court's injunction not only prohibited HHS from enforcing the "Gender Conditions" themselves, but also enjoined the agency from

> imposing or enforcing [against plaintiffs] . . . any *materially similar* terms or conditions . . . , including any *other* terms or conditions that require Plaintiff States to remove 'gender ideology[]' . . . from their PREP and SRAE curricula or that require Plaintiff States to remove gender identity references from that curricula.

ER-80 (emphases added). The court appeared to base that broad injunction on a series of equally broad declarations that HHS may not limit the inclusion of gender content in PREP or SRAE programs in any way. As the court understood it, "the PREP and SRAE statutes provide no grounds to require that Plaintiff States remove gender identity references from their [program materials]," ER-38, because HHS lacks

12

authority either generally to "define the limits of permissible . . .
content" in each program, ER-40 (alteration and quotation marks
omitted), or to determine that specific content related to gender identity
is medically inaccurate, ER-38-40, or culturally inappropriate, ER-
40-43.

## SUMMARY OF ARGUMENT

The preliminary injunction should be vacated. As HHS recognized,
a significant number of state PREP and SRAE curricula exceed the
bounds of their respective authorizing statutes by incorporating content
that relates to gender ideology rather than the specific topics those
programs must address by law. The district court provided no basis for
concluding that the PREP and SRAE statutes preclude any limits on
the gender content included in curricula under those programs.
Moreover, even if the court were correct that the Gender Conditions at
issue in this case to some extent exceed HHS's authority to limit such
content, the court's choice of remedy was fundamentally overbroad. The
preliminary injunction improperly intrudes on HHS's unchallenged
authority to enforce the curricular limitations that no party disputes
Congress applied to PREP and SRAE.

13

**1.** The PREP and SRAE programs at issue in this case are required by law to provide adolescent education on particular topics. PREP programs must teach abstinence and contraception for the prevention of pregnancy and disease, along with "adulthood preparation topics" like "adolescent development," "financial literacy," and "healthy life skills." SRAE programs must educate exclusively on the benefits to youth of refraining from sexual activity.

After reviewing curricular materials submitted by PREP grantees, HHS developed concerns that state PREP and SRAE programs had strayed from those statutory moorings by incorporating instruction on ideologically charged topics—such as discussions of gender from a historical, sociological, or legal perspective—that are entirely distinct from the practical approach to risk reduction and personal growth that Congress authorized. The district court made no effort to explain how such content is consistent with those core statutory directives.

**2.** The district court compounded its error by issuing an injunction that sweeps much more broadly than the Gender Conditions that were the subject of this lawsuit. When a court finds it likely that an agency action is unlawful, the proper remedy is to afford plaintiffs relief from

14

the challenged action without placing an "impermissible substantive restraint" on what the agency does going forward. *See National Wildlife Fed'n v. National Marine Fisheries Serv.*, 524 F.3d 917, 937-38 (9th Cir. 2008). Simply put: When a court invalidates "a particular agency order," what comes next is "for the agency to decide." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 159-60 (2010).

The injunction on here is rife with impermissible substantive restraints. It begins with the only relief plaintiffs asked for—an injunction against "imposing or enforcing the Gender Conditions" themselves. ER-80. But it then goes further, barring HHS from imposing or enforcing "any *materially similar* terms or conditions," including "any *other* terms or conditions that require Plaintiff States to remove 'gender ideology[]' . . . [or] gender identity references" from PREP and SRAE curricula. *Id.* (emphasis added) In essence, the district court transformed a conclusion that gender content could sometimes be included into a definitive ruling that no limits could be placed on its inclusion.

That was erroneous. Even if plaintiffs were correct that they are in some circumstances entitled to include gender content in their PREP

and SRAE materials, such that the Gender Conditions were overbroad, that would not entitle them to a sweeping injunction of this kind. Rather, it would still remain for HHS to determine whether the state programs that include gender content have done so consistent with the curricular limitations that no party disputes are built into PREP and SRAE's respective statutory designs.

**3.** The district court made matters worse by prejudging a further subsidiary question that HHS had expressly declined to reach—whether the gender content included in plaintiffs' PREP and SRAE curricula is medically accurate and culturally appropriate. In so doing, the court contravened the "foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked." *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quotation marks omitted). "A reviewing court usurps the agency's function when it sets aside [an] administrative determination upon a ground" that the agency did not rely upon and thereby "deprives [it] of an opportunity to consider the matter, make its ruling, and state the reasons for its action."

16

*Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946).

## STANDARD OF REVIEW

To obtain the "extraordinary remedy" of a preliminary injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). This Court reviews an order regarding preliminary injunctive relief for abuse of discretion. *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.7 (9th Cir. 2005). Any "underlying issues of law," however, are reviewed de novo. *Id.*

## ARGUMENT

## THE PRELIMINARY INJUNCTION MISCONTRUES THE PREP AND SRAE STATUTES AND ARROGATES TO THE DISTRICT COURT AUTHORITY THAT IS VESTED IN THE AGENCY

The PREP and SRAE programs at issue in this case are required, by statute, to address particular topics. PREP programs must teach "both abstinence and contraception for the prevention of pregnancy and sexually transmitted infections," 42 U.S.C. § 713(b)(2)(A)(i), and at least three of six enumerated "adulthood preparation subjects," *id.*

17

§ 713(b)(2)(A)(ii), such as "[a]dolescent development," "[f]inancial literacy," and "[h]ealthy life skills," *id.* § 713(b)(2)(C). SRAE programs must "implement education exclusively on sexual risk avoidance," defined as "voluntarily refraining from sexual activity." *Id.* § 710(b)(1). To that end, SRAE programming must address each of six enumerated sub-topics, such as "[t]he increased likelihood of avoiding poverty when youth attain self-sufficiency and emotional maturity before engaging in sexual activity," and "[h]ow other youth risk behaviors, such as drug and alcohol usage, increase the risk for teen sex." *Id.* § 710(b)(3). In addressing each of these topics, SRAE programming's "unambiguous and primary emphasis and context" must be "a message to youth that normalizes the optimal health behavior of avoiding nonmarital sexual activity." *Id.* § 710(b)(2)(A).

After reviewing PREP curricular materials from a number of states, HHS developed concerns that state PREP programs had drifted away from their statutory moorings. A PREP curriculum currently in use by 10 plaintiffs instructs facilitators to teach that ideas about "gender behavior" have "change[d] . . . at different times in history" and that "[s]ometimes one gender is given more power or status than

18

another." ER-85, ER-89, ER-98, ER-106, ER-115, ER-119, ER-123, ER-129, ER-139, ER-160. Discussions on such historical and sociological topics are unrelated to either "abstinence and contraception for the prevention of pregnancy and sexually transmitted infections," *see* 42 U.S.C. § 713(b)(2)(A)(i), or to "adulthood preparation subjects" like "[p]arent-child communication," or "financial literacy," *id.* § 713(b)(2)(A)(ii), (C). The agency thus reasonably concluded that they could not be funded through this grant program.

Likewise for one of the District of Columbia's PREP lesson plans, which asks students to identify the "states where there are no explicit laws against discrimination based on . . . gender identity" and sets as one of its "[l]earning [o]bjectives" that students be able to "advocate" in support of social causes that include "LGBTQ+ social movements." ER-94. Once again, there is no connection between such content and the statutorily mandated objectives of the PREP program, and HHS reasonably concluded that funding was unavailable for it.

Beyond these and other specific materials that PREP grantees had submitted for review in spring 2025, HHS developed a more general concern that the PREP and SRAE programs, which were

19

designed to provide education on specific topics, were being used to
provide lessons on entirely distinct (and ideologically charged) topics.
Accordingly, HHS adopted funding conditions for both PREP and SRAE
that addressed this concern directly with respect to gender content, and
directed PREP grantees that had submitted program materials
containing gender content to remove that content from their curricula.

Nothing in the district court's reasoning demonstrates that HHS's
concerns were misplaced or, for that matter, addresses them at all. The
court disagreed with HHS's view that the programs were designed to be
anchored "in traditional understandings of biological sex" and not "in
evolving theories of identity or gender expression." ER-34-38. But the
fundamental point is that, regardless of how the statutorily mandated
content is delivered, "[t]he parties agree[d] that Congress clearly stated
that the purpose of the PREP and SRAE programs is to reduce
adolescent rates of pregnancy and [sexually transmitted infections],
including HIV." ER-35. The court did not even attempt to explain how a
survey of state law regarding gender identity discrimination or
historical analyses of gender roles relate to those objectives, or to the

20

statutorily-enumerated topics that Congress required states to address in pursuing them.

The district court compounded its error by issuing an injunction that sweeps much more broadly than the Gender Conditions that were the subject of this lawsuit. It is black-letter law that the "manner in which [an agency] implements [a] court's order to enforce the [law] is, in the first instance, a matter of agency discretion." *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987). When a court determines (or finds it likely, as here) that an agency action is unlawful, the proper remedy is to afford plaintiffs relief from the challenged action without placing an "impermissible substantive restraint" on what the agency does going forward. *See National Wildlife Fed'n v. National Marine Fisheries Serv.*, 524 F.3d 917, 937-38 (9th Cir. 2008).

Simply put: When a court invalidates "a particular agency order," what comes next is "for the agency to decide." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 159-60 (2010). If an aggrieved party believes those next steps are unlawful, it may "bring a separate suit under the [Administrative Procedure Act] to challenge" whatever new action the agency takes. *Id.* But "[u]ntil such time as the agency decides whether

and how to exercise its regulatory authority" in the wake of an adverse decision, "courts have no cause to intervene" by entering "broad injunction[s]" that "essentially pre-empt[]" its decision on how best to exercise "the authority vested in [it] by law." *Id.* at 160, 164.

The injunction on here is rife with impermissible substantive restraints. It begins with the only relief plaintiffs asked for—an injunction against "imposing or enforcing the Gender Conditions as defined in the Plaintiff States' Motion for Preliminary Injunction." ER-80; *see, e.g.*, ER-226 (alleging that plaintiffs are suffering irreparable harm traceable to the Gender Conditions); ER-235 (alleging that the Gender Conditions "directly conflict with the broad language and central purpose of the [PREP and SRAE] statutes" because they impose "a blanket prohibition on including 'gender ideology'"); ER-237 (praying from relief addressed to "the PREP and SRAE Gender Conditions and Defendants' actions to effectuate them"); ER-191-92 (seeking preliminary injunction against HHS "directive" that "states remove *any* reference—even a passing one—to inclusive gender identity"); ER-193 (requesting preliminary injunction against "implementation and enforcement" of the Gender Conditions). But it then goes further,

22

barring HHS from imposing or enforcing "any *materially similar* terms or conditions," including "any *other* terms or conditions that require Plaintiff States to remove 'gender ideology[]' . . . [or] gender identity references" from PREP and SRAE curricula. ER-80 (emphases added).

Even if plaintiffs were correct that they were in some circumstances entitled to include gender content in their PREP and SRAE materials, such that the Gender Conditions were overbroad, that would not entitle plaintiffs to a sweeping injunction of this kind—one that "reaches beyond the scope of the complaint and enjoins government regulations that were explicitly never challenged or litigated." *Church of the Holy Light of the Queen v. Holder*, 443 F. App'x 302, 303 (9th Cir. 2011) (vacating injunction against enforcement of generally-applicable controlled substances regulations that swept beyond the particular "outright prohibition" that the plaintiff had challenged as burden on religious observance).

This Court has regularly vacated injunctions that purport to invalidate agency decisions that were never challenged in litigation, or that prohibit an agency from taking lawful action that might produce a result similar to the action in which the court has identified some

23

defect. *Meinhold v. Department of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994) (vacating injunction to the extent it went beyond ordering that the Navy reinstate unlawfully discharged sailor and not discharge him on same ground in the future); *see also Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1197 (9th Cir. 2024) (vacating injunction to the extent it went beyond recreational wolf trapping to prohibit other types of wolf trapping that the plaintiffs had not challenged); *see also Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842-43 (D.C. Cir. 1985) (vacating injunction that "enjoin[ed] disclosure not only of the [specific document at issue], but also of all 'substantially similar' documents"). Even if the district court were correct to find fault with the Gender Conditions that were challenged in the complaint, it would remain for HHS to determine in the first instance whether the state programs that include gender content have done so consistent with the curricular limitations that no party disputes are built into each program's statutory design.[5]

---

[5] The district court only compounded its intrusion into HHS's administration of the PREP and SRAE statutes to the extent it suggested that HHS may be required to continue funding programs that violate statutory limits if plaintiffs claim a reliance interest in it doing

*Continued on next page.*

To make matters worse, the district court prejudged a subsidiary question that HHS never reached at all—whether the gender content included in plaintiffs' PREP and SRAE curricula is medically accurate and culturally appropriate. HHS did not apply those program quality standards because it concluded that gender content fell outside the topics that Congress had authorized each program to address in the first instance. *See, e.g.*, ER-83 n.1. Even if the court were correct that in some instances gender content may be germane to those topics— though, as discussed above (*supra* pp.18-19), the record includes examples that clearly are not—it would be up to HHS to determine whether the remaining statutory criteria were met. The court had no authority to do so in the first instance. But it plowed ahead with an analysis of the "medical literature," ER-38-43, based not on the record before the agency but on a declaration that plaintiffs prepared for this litigation and provided to the district court.

---

so. *See* ER-46-51. Courts at one time demanded that an agency consider reliance interests when it engaged in *discretionary* re-interpretation of a statute under *Chevron. See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). But *Chevron* is no longer the law, and here HHS does not have discretion to exercise when it interprets Congress's commands. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

25

In so doing, the district court contravened the "foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked." *Department of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (quotation marks omitted). "A reviewing court usurps the agency's function when it sets aside [an] administrative determination upon a ground" that the agency did not rely upon and thereby "deprives [it] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946). And even if HHS's decision *had* rested on medical accuracy grounds, such a determination would still be a "classic example of a factual [issue] . . . which implicates substantial agency expertise" and would be subject only to highly deferential arbitrary-and-capricious review. *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 376-78 (1989).

Finally, the district court's injunction is fundamentally overbroad insofar as it transformed a conclusion that HHS was incorrect to exclude *all* gender content into an injunction prohibiting HHS from excluding *any* such content. Although the court concluded, as a general

26

matter, that gender content could fit within the statutory program, it identified no basis for presuming that all such content would fit within the program's purposes, much less that all such content—none of which was specifically before the court, and none of which HHS had analyzed for medical accuracy—was categorically eligible to be included after considering all of the relevant statutory factors.

In short, the district court's injunction ignored the circumstances in which gender content appeared in curricula without any evident link to the statutory purposes, transformed a conclusion that gender content could sometimes be included into a definitive ruling that no limits could be placed on its inclusion, and prejudged a number of matters that the agency had not yet had an opportunity to address. The injunction should be vacated.[6]

---

[6] The district court's opinion also discussed a number of purportedly separate grounds for an injunction barring any limits on the inclusion of gender content in PREP and SRAE curricula, but each was fundamentally premised on the same flawed analysis. *See* ER-44-46 (reframing disagreement with HHS's statutory interpretation as conclusion that adoption of Gender Conditions based on that purportedly erroneous interpretation was arbitrary and capricious), ER-46-51 (same, as conclusion that adoption of Gender Conditions was an unreasoned change in position), ER-51-52 (same, as conclusion that Gender Conditions violate statutory bar on sex discrimination), ER-52-

*Continued on next page.*

27

## CONCLUSION

For these reasons, the preliminary injunction should be vacated.

Respectfully submitted,

*Of Counsel:*

EMILY CLAIRE MIMNAUGH
  *Deputy General Counsel*

*U.S. Department of Health and
  Human Services*

BRETT A. SHUMATE
  *Assistant Attorney General*

SCOTT E. BRADFORD
  *United States Attorney*

DANIEL TENNY

 *s/ Gabriel I. Schonfeld*  
GABRIEL I. SCHONFELD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7219*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3306*
  *gabriel.i.schonfeld@usdoj.gov*

FEBRUARY 2026

---

53 (same, as conclusion that agency's stated reason for adopting Gender Conditions was pretextual), ER-54-61 (same, as conclusion that adoption of gender conditions violated the separation of powers and Spending Clause).

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellants state that they know of no related cases pending in this Court.

*s/ Gabriel I. Schonfeld*
GABRIEL I. SCHONFELD

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,209 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Gabriel I. Schonfeld*
GABRIEL I. SCHONFELD